United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Deceide Gustave and others,<br>Plaintiffs,<br><br>v.<br><br>SBE ENT Holdings, LLC and<br>others, Defendants. | )<br>)<br>)<br>)   Civil Action No. 19-23961-Civ-Scola<br>)<br>)<br>) |

## Omnibus Order

This matter is before the Court on the Defendants' motion to compel arbitration and stay the proceedings with respect to 15 of the 19 Plaintiffs who are alleged to have signed agreements requiring them to arbitrate their claims. (Defs.'s Mot., ECF No. 10.) The Plaintiffs' related motion to preclude the Defendants' reliance on certain declarations is also before the Court. (Pls.'s Mot., ECF No. 114.) The Defendants' motion to compel applies to 15 of the Plaintiffs. They are Carmen Duffoo, Teresa Echevarria, Eduardo Flores, Deceide Gustave, Yvon Hilaire, Miguelina Jimenez, Sophia Leon, Moises Madriz, Joseph Metellus, Celamene Pierre, Edmond Raymond, Jose Salazar, Jose Sanchez, Rodnet Theoc, and Sanders Villier. The motion is not directed at Plaintiffs - Terencius Delphin, Larry Nelson, Camereze Saint Fort, or Lucienne Victorare. While the motion to compel arbitration is not directed at all of the Plaintiffs in the case, for ease of reference this Order uses the term "Plaintiffs" to refer to the 15 Plaintiffs as to whom the Motion to Compel Arbitration is directed.

The Defendants moved to compel arbitration on the basis that each of the Plaintiffs signed a document (an "Acknowledgement") in which they agreed to arbitrate certain claims against the Defendants. The fact that the Plaintiffs signed those documents is not in dispute. Rather, the Plaintiffs challenge the enforceability of the Acknowledgements on several grounds, including unconscionability, scope, waiver, and novation. (Pls.'s Resp., ECF No. 115.) The Plaintiffs' motion to preclude seeks to strike the Defendants' declarations generally because they contain statements that are purportedly not based on personal knowledge. The Defendants dispute that position, but also appear to concede that the Court need not rely on the declarations in order to grant the motion to compel. (Defs.'s Resp., ECF No. 121.) Having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court **grants** the motion to compel arbitration (**ECF No. 10**) and **denies as moot** the motion to preclude (**ECF No. 114**).

## I.    Background

This case was brought by nineteen Plaintiffs who are former food and beverage or kitchen workers at the Delano Hotel (the "Delano"), an "SBE" hotel, in Miami Beach, Florida. The Plaintiffs assert claims against the Defendants for violations of the Civil Rights Act of 1964, Section 703 of Title VII, 42 U.S.C. § 2000e-2 (Count I); unlawful employment practices under the Florida Civil Rights Act, § 760.10, Fla. Stat. (Count II); violations of the Age Discrimination in Employment Act, 29 U.S.C. § 623, *et seq.* (Count III); violations of the Americans with Disabilities Act, 29 U.S.C. § 701, *et. seq.* (Count IV); and hostile and abusive working environment (Count V).

In 2016, the Defendants purchased the Delano (and other hotels that are not relevant to this case). (ECF No. 114 at 2.) In the months following this transaction, the Defendants allegedly implemented a discriminatory strategy to re-brand the Delano Hotel and its restaurants by hiring and employing younger employees. (*Id.*) The Plaintiffs claim that this strategy resulted in the termination of long-time employees of the Delano, including the Plaintiffs. (*Id.*) In or about 2017, the Plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC initiated an investigation. (*Id.*) The Defendants purportedly participated in that EEOC investigation, which resulted in the EEOC's issuance of right to sue letters. (*Id.*) Following the issuance of the right to sue letters, the Plaintiffs filed the instant suit against their former employers, the Defendants, for violation of federal and state discrimination laws for engaging in age, disability, racial, and national origin discrimination. (Compl., ECF No. 1.)

On November 27, 2019, the Defendants filed their motion to compel arbitration, seeking to compel arbitration as to 15 of the 19 Plaintiffs. (ECF No. 10.) In support of their motion, the Defendants submitted the declarations of Lourdes Paredes and James Greely. (ECF Nos. 10-1; 10-2.) However, briefing on the motion to compel was stayed for approximately six months to allow the Plaintiffs to take arbitration-related discovery. (ECF Nos. 37, 53, 66.) During that time, the parties exchanged interrogatories and answers, and the Plaintiffs deposed at least four witnesses. (ECF Nos. 112, 122.)

The motion to compel was accompanied by an excerpt of an Acknowledgement providing:

> I specifically state that I have read those parts of this Handbook that require Binding and Final Arbitration of any dispute that I have relating to my employment that is not resolved directly with management. I accept and agree to all terms and conditions of the

policy for Binding and Final Arbitration as they are described in this Handbook.

(ECF No. 112-4 at 70.) The parties dispute whether the "Handbook" referenced in the Acknowledgements is the 2009 Morgans Hotel Group Handbook (the "2009 Handbook"), or one of several other subsequently created handbooks. Although the 2009 Handbook refers to Morgans Hotel Group ("Morgans"), the parties do not dispute that Morgans was acquired by Defendant SBE ENT Holdings, LLC ("SBE"). (ECF No. 10 at 3.)

There is no dispute that the Plaintiffs signed the Acknowledgements. (ECF No. 115 at 10 ("Plaintiffs acknowledge their signatures [on the Acknowledgements].").) The Plaintiffs admitted to signing the Acknowledgements in their responses to the Defendants' interrogatories. (*See, e.g.*, Pl. Echevarria's Answers to Interrogatories, ECF No. 112-12 at 4 ("The signature . . . on Exhibit A [(the Acknowledgement)] to *Defendants' First Requests for Admission to Arbitration Plaintiff Teresa Echevarria* is my signature."); *see also* Pl. Flores's Answers to Interrogatories, ECF No. 112-13 at 4 (same).) However, the Plaintiffs were unable to read English, the language in which the Acknowledgements were written, and the Plaintiffs' native languages are either Creole or Spanish. (ECF No. 115 at 10.) The Plaintiffs admit that a Spanish interpreter was present when they signed the Acknowledgements. (*Id.*) The Plaintiffs do not claim that they asked for a translation of any portion of the Acknowledgements or handbooks, or that they asked or be provided with copies of same. Rather, they claim that there was an affirmative misrepresentation with respect to the terms that they signed and that they were never given copies of any of the handbooks.

Between 2009 and 2016, several handbooks came into existence. The 2009 Handbook provides that:

> Morgans Hotel Group agrees and each employee is required to submit any dispute related to that individual's employment to arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association (AAA), if it was not previously resolved. All right to reconsideration, appeal and enforcement are contained in the AAA arbitration rules.

(ECF No. 10-1 at 11.) The critical post-2009 handbook is the handbook created by SBE sometime in 2016 (the "2016 Handbook"). (ECF No. 112-7.) Where the 2009 Handbook provides for mandatory arbitration, the

2016 Handbook provides that "the employee *may* proceed to arbitration . . . ." (ECF No. 112-7 at 62 (emphasis added).)

In support of their motion to compel arbitration, the Defendants rely upon declarations made by Lourdes Paredes and James Greeley, employees of SBE. Ms. Paredes asserts in her declaration that all of the Acknowledgements at issue correspond to the 2009 Handbook. (ECF No. 131 at 5.) Mr. Greeley's declaration states that at all relevant times, "Morgans Hotel Group Management, LLC" was the Plaintiffs' employer. (ECF No. 10-2.) During the six months of arbitration-related discovery, the Plaintiffs deposed Paredes and Greeley. Based on information uncovered during those depositions, the Plaintiffs moved to preclude the Defendants' reliance on the declarations of Paredes and Greeley.

## II.    Legal Standard

The Federal Arbitration Act ("FAA") governs the validity of an arbitration agreement. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (citation omitted). The FAA "embodies a liberal federal policy favoring arbitration agreements." *Id.* (internal quotations omitted). The FAA provides that a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (internal quotations and citations omitted). Under Florida law, the party seeking enforcement of an arbitration agreement has the burden of establishing that an enforceable agreement exists. *See CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st DCA 2019) (citing *Palm Garden of Healthcare Holdings, LLC v. Haydu*, 209 So. 3d 636, 638 (Fla. 5th DCA 2017) ("Appellants, as the proponents of arbitration, have the burden of establishing an enforceable written agreement to arbitrate.")). Additionally, "a district court considering the making of an agreement to arbitrate should give to the party denying the agreement the benefit of all reasonable doubts and inferences that may arise." *Magnolia Capital Advisors Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 786 (11th Cir. 2008) (internal quotation marks omitted).

## III.   Analysis

The Plaintiffs oppose the motion to compel arbitration for five reasons. First, they argue that the Defendants have failed to establish that there is a valid and enforceable arbitration agreement. Second, they argue that the Defendants waived their right to arbitration. Third, they argue that the Defendants anticipatorily repudiated the arbitration agreement. Fourth, the Plaintiffs argue that the scope of the arbitration agreement does not encompass

the claims in this case. Fifth, they argue that the arbitration agreement is unconscionable. The Court addresses these five arguments in turn and concludes that they do not warrant denial of the motion to compel arbitration.

### A. The Acknowledgements Are the Arbitration Agreement.

#### i.  Identifying the Agreement.

The threshold issue in this case is identifying what, among the several documents referenced in the briefs, is the "arbitration agreement." Is it one of the several handbooks? Is it the one-page Acknowledgements? Or is it some combination of the Acknowledgements and one or multiple handbooks?

The Eleventh Circuit has made clear "arbitration is simply a matter of contract." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)). Therefore, when determining whether an arbitration agreement exists, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Dasher*, 745 F.3d at 1116. Under Florida law, the party seeking to compel arbitration has the burden of proving "offer, acceptance, consideration and sufficient specification of essential terms . . . by a preponderance of the evidence." *Schoendorf v. Toyota of Orlando*, 2009 WL 1075991, at *6 (M.D. Fla. Apr. 21, 2009) (citing *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004)).

The Court finds that the Acknowledgements are the binding arbitration agreements in this case. "Where an acknowledgment form expressly contains arbitration language, courts have compelled arbitration." *Etienne v. Hang Tough, Inc.*, No. 08-CV-61682, 2009 WL 1140040, at *2 (S.D. Fla. Apr. 28, 2009) (Cohn, J.). In *Owens v. Brookwood Med. Ctr. of Tampa, Inc.*, No. 95-1938-CIV-T-25(B), 1996 WL 376772 (M.D. Fla. Mar. 21, 1996), the Court compelled arbitration where the plaintiff signed an employee handbook acknowledgement form "containing [an] [arbitration] provision." *Id.* at *1; *see also Lemmon v. Lincoln Property Co.*, 307 F.Supp.2d 1352, 1354-55 (M.D. Fla. 2004) (same). Here, the Acknowledgements were presented to the Plaintiffs and accepted as terms of their continued employment when signed. To wit, each signed Acknowledgement states that the employees "accept and agree to all terms and conditions of the policy for Binding and Final Arbitration as they are described in this Handbook." (ECF No. 112-4 at 70.) Additionally, the Eleventh Circuit has held that Florida courts will find in favor of an enforceable agreement to arbitrate if the acknowledgment incorporates by reference the arbitration policy contained in an employee handbook. *See World Rentals and Sales, LLC v. Volvo Construction Equipment Rents, Inc.*, 517 F.3d 1240, 1254 (11th Cir. 2008),

*abrogated on other grounds by Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1355 (11th Cir. 2017). However, an acknowledgement form may itself be the arbitration agreement, even though the acknowledged handbook "[i]s not a contract" where "the arbitration language in the acknowledgment formed a binding contract." 307 F.Supp.2d at 1355. Whether on their own or in conjunction with an incorporated handbook, the Court is satisfied that that Acknowledgements, which are signed and manifest an intent to arbitrate, themselves are or are part of the arbitration agreement.

The next question before the Court is to determine which handbook (of many) is contemplated by the Acknowledgements' reference to "*this* Handbook." At least two things are known about the handbook contemplated by the Acknowledgements. First, the contemplated handbook had to exist before 2016 because the Acknowledgements were signed between 2010 and 2013. (ECF No. 115 at 8.) Second, the contemplated handbook contains a "Binding and Final Arbitration" policy. Thus, the Court can deduce that the 2016 Handbook, which was not in existence when the Acknowledgements were signed and does not require binding arbitration, cannot be the handbook contemplated by the Acknowledgements.

> ii.  *The Motion to Preclude the Defendants' Reliance on the Paredes and Greeley Declarations.*

In an attempt to cast doubt on the validity of the Acknowledgements, the Plaintiffs moved to preclude the declarations of Paredes and Greeley. As an initial matter, the motion to preclude is not properly before the Court. That motion improperly circumvented the page limit for responsive briefing. The Plaintiffs' response in opposition to the motion to compel already raised the issues that they repeated in their motion to preclude. (*Compare* Pls.'s Resp., ECF No. 115 at 14-15 ("[Paredes] conceded that she has no personal or institutional knowledge of the Handbook or the Acknowledgements") *with* Pls.'s Mot. to Preclude, ECF No. 114 at 10 ("[Paredes] conceded that in fact, she did not have personal or institutional knowledge of the 2009 Handbook or the Acknowledgments, thereby contradicting her declaration.")). In other words, the Plaintiffs were aware of their challenges to the declarations when they responded to the motion, yet they saved those challenges for a separate motion and did not fully brief them in their response.

This tactic of shoehorning surplus argument into a brief by casting it as a separate motion to strike is unwelcome. In *Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC*, "the Court construe[d] a motion to strike such as that brought by Plaintiff in this case as a procedural device by which a party

may try to exceed the page limits imposed by the Local Rules and the orders of the Court." 845 F. Supp. 2d 1241, 1253 (M.D. Fla. 2012). As that Court explained, page limits are "intended to focus the parties' attention on the most pressing matters and winnow the issues to be placed before the Court, thereby conserving judicial resources." *Id*. In this case, the motion to preclude only served to tack 36 pages onto a straightforward issue that was already previewed by the Plaintiffs in their opposition to the motion to compel. "The Court will not countenance any attempt to avoid the page limit requirement . . . . Thus, Plaintiff's motion is due to be denied for this reason alone." *Id.*

On the merits, the motion does not persuade the Court that any issues in the Paredes or Greeley declarations warrant denial of the motion to compel. Paredes' declaration attached the signed Acknowledgements and excerpts of the handbooks. (ECF No. 10-1.) Greeley's declaration states that Morgans was the Plaintiffs' employer prior to SBE taking over in 2016, which would explain why the SBE Defendants seek to enforce against the Plaintiffs contracts that the Plaintiffs entered into with Morgans. However, the motion to preclude is a red herring. The Court can fully resolve the motion to compel arbitration without relying on those declarations. Specifically, the Plaintiffs' own admissions that they signed the Acknowledgements obviates any need to consider what Paredes and Greeley have to say about the Acknowledgements. (ECF No. 115 at 10 ("Plaintiffs acknowledge their signatures" on the Acknowledgements).) In *Perhach v. Option One Mortgage Corp.*, the Eleventh Circuit Court of Appeals affirmed the District Court's decision to compel arbitration on the basis that the plaintiff "admitted to signing the Arbitration Agreement." 382 F. App'x 897, 899–900 (11th Cir. 2010). As to Greeley, one of the Defendants' designated corporate representatives, the Plaintiffs claim that his declaration is improper because it was purportedly based on nondescript "group discussions." (ECF No. 114 at 14.) However, Greeley testified at his deposition that he reviewed various pertinent documents supporting his declaration that SBE is the successor to the Plaintiffs' counterparties with respect to the Acknowledgements. (ECF No. 121 at 3-4.) Moreover, the Plaintiffs did not dispute the Defendants' relationship with Morgans.

### ii. The Acknowledgements Were Not Superseded by the 2016 Handbook.

The Acknowledgements "require Binding and Final Arbitration of any dispute that [employees] have relating to [their] employment." (ECF No. 112-4 at 70.) This gives the Plaintiffs no choice but to pursue their claims in arbitration, subject to their defenses as discussed further below. However, after

the Plaintiffs signed the Acknowledgements, SBE created the 2016 Handbook, which states that in the event of a dispute, "the employee *may* proceed to arbitration . . . ." (ECF No. 112-7 at 62 (emphasis added).) This language is significant because it appears to make arbitration optional, which would justify the Plaintiffs' choice to bring this case in federal court instead of directly to arbitration. Thus, the question is whether the optional language in the 2016 Handbook superseded the mandatory language in the Acknowledgements.

Under Florida law, a subsequent agreement can terminate or modify a preexisting contract. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) ("It is well established that the parties to a contract can discharge or modify the contract, however made or evidenced, through a subsequent agreement.") (citation omitted). In particular, a novation is a mutual agreement between the parties for the discharge of a valid existing obligation by the substitution of a new valid obligation. *Aronowitz v. Health–Chem Corp.,* 513 F.3d 1229, 1237 (11th Cir. 2008). Novation of a former agreement in favor of a superseding agreement "is controlled by the intention of the parties" and requires the parties to agree that the new contract will replace and extinguish the old one. *Giraud v. Woof Gang Bakery, Inc.*, No. 817CV02442RALAEP, 2018 WL 3151689, at *3 (M.D. Fla. Apr. 4, 2018).

As noted in Part III.A.i., *supra*, the 2009 Handbook, not the 2016 Handbook, was incorporated into the Acknowledgements. Now the Court concludes that the standalone 2016 Handbook did not supersede the Acknowledgements. "[I]t is well settled that the actual language used in the contract is the best evidence of the intent of the parties," *Incarcerated Entm't, LLC v. Cox*, Civil Action No. 18-21991-Civ-Scola, 4 (S.D. Fla. Sep. 27, 2019) (Scola, J.) (citation omitted). Thus, the Court's assessment of whether the 2016 Handbook is a new contract that supersedes the Acknowledgements begins with the text of the 2016 Handbook. The 2016 Handbook provides that "[n]othing in this Handbook is intended to change the at-will policy, and neither this Handbook, nor its contents, constitutes a contract of any sort." (ECF No. 112-7 at 9.). It is axiomatic that the document offered as a superseding contract must, in the first instance, be a contract. But where that unsigned document expressly states that it does not "constitute[] a contract of any sort," it cannot simultaneously be treated as a binding contract – much less a contract of the sort that vitiates a previously signed agreement such as the Acknowledgements. *See White Holding Co. v. Martin Marietta*, 423 F. App'x 943, 948 (11th Cir. 2011) (finding that there was "not a meeting of the minds" where plaintiff sought to enforce a document that stated it was "not intended to create nor should it be construed as creating any legal obligation"). The Court also notes that the Plaintiffs put forth no evidence of "acceptance and

consideration of a modification invalidating the parties' arbitration agreement." *Moreno v. Progistics Distribution, Inc.*, No. 18 C 1833, 2018 WL 3659348, at *7 (N.D. Ill. Aug. 2, 2018) (holding that subsequently issued handbook, which stated that it "is not a binding contract," did not invalidate prior arbitration agreement absent formation of new contract).

Similarly unavailing is the Plaintiffs' argument regarding Plaintiff Duffoo. (*See* ECF No. 115 at 9.) Specifically, the Plaintiffs argue that Chef Icardi, one of the Plaintiffs' supervisors, "asked employees to sign *policies* from the [2016 Handbook]." (*Id.* (emphasis added).) The Plaintiffs' argument makes clear that only one policy – an attendance policy – contained among the many terms in the 2016 Handbook was signed by Plaintiff Duffoo, who is only one of 19 plaintiffs in this case. First, the Plaintiffs make no argument that Plaintiff Duffoo's signature of an attendance policy somehow binds over a dozen other plaintiffs who never even saw the 2016 Handbook. Second, even assuming that Plaintiff Duffoo's signature on an attendance policy that came from the 2016 Handbook turned the attendance policy into a contract, the Plaintiffs do not argue that the *entirety* of the 2016 Handbook – including, for example, its optional arbitration terms – had the force of a contract as to Plaintiff Duffoo (much less as to all of the remaining plaintiffs).

## B. The Defendants Did Not Waive or Anticipatorily Repudiate the Acknowledgements.

The Plaintiffs argue that the Defendants waived or anticipatorily breached the arbitration provision in the Acknowledgements by failing to comply with a purported pre-arbitration dispute resolution procedure. That "procedure" comes from a portion of the 2009 Handbook, which asks that employees "please" discuss concerns with their supervisor, followed by other internal resolution steps, to attempt to amicably resolve any "concerns" or "issues." (ECF No. 112-4 at 60.) However, the Court does not find that this procedure is an enforceable condition precedent to arbitration, the violation of which could result in waiver.

In support of their argument that the above-referenced procedure is a condition precedent, the Plaintiffs cite *Aberdeen Golf & Country Club v. Bliss Const., Inc.*, 932 So. 2d 235 (Fla. 4th DCA 2005). In that case, the court affirmed the denial of a motion to compel arbitration based on the theories of waiver and anticipatory repudiation after finding that the arbitration agreement did in fact contain an alternative dispute resolution provision and that the defendant violated that provision. However, the provision at issue in *Aberdeen* is quite different than the provision in the 2009 Handbook. Specifically, the provision in *Aberdeen* provides that "Claims . . . shall be referred initially to the

Architect for decision. An initial decision by the Architect shall be required *as a condition precedent* to mediation, arbitration or litigation of all Claims between the Contractor and Owner . . . ." *Id.* at 238, n.2 (emphasis added). The "shall" and "condition precedent" language for handling "Claims" in *Aberdeen* is materially different than the procedure that the 2009 Handbook asks the employees to "please" follow to address their "concerns and issues." *Id.*; ECF No. 112-4 at 60. The 2009 Handbook procedure also asks employees to "please contact [their] Human Resources Department" and it states that appointments "*can*" – not *shall* – be made with members of that Department. (*Id.* (emphasis added).) Perhaps more fundamentally, like the 2016 Handbook, the 2009 Handbook is not a standalone contract. The terms of the 2009 Handbook are only binding on the parties to the extent they are incorporated by the Acknowledgements. That is because the 2009 Handbook provides that:

> The personnel policies and *procedures* described here are intended only for the information and guidance of our employees. This [2009] Handbook is not an employment contract and does not guarantee any fixed term or conditions of employment.

(ECF No. 112-4 at 40 (emphasis added).) The language used in the 2009 Handbook's pre-arbitration "procedure" is so noncommittal that it cannot be analogized to the ironclad condition precedent language in *Aberdeen*. And, even if it used the same binding language, the 2009 Handbook procedure cannot be a contract because elsewhere that same document provides that its "procedures" are "not an employment contract" and do not provide any "conditions of employment," which are express manifestations of an intent not to be bound. (*Id.*)

### C. The Claims in this Case Are Within the Scope of the Acknowledgements.

By signing the Acknowledgements, the Plaintiffs acknowledged the requirement of "Binding and Final Arbitration of any dispute I have *relating to my employment* . . . ." (ECF No. 112-4 at 70.) The Plaintiffs argue that the "discrimination claims arising from their termination are outside the scope of the purported arbitration agreement, which applies to claims related to employment and does not mention claims related to termination nor [does it apply] as to all claims asserted against the employer." (ECF No. 115 at 21.) To put it succinctly: The question is whether an arbitration provision that applies to disputes "relating to [] employment" also applies to disputes relating to the *termination of* employment. The Court holds that the parties' dispute arising

from the termination of the Plaintiffs' employment falls within the scope of the arbitration provision.

As an initial matter, the Plaintiffs cite no authority for the proposition that an arbitration provision encompassing disputes relating to employment does not also encompass disputes relating to the termination thereof. On the contrary, the Plaintiffs cite *Lambert v. Austin Ind.*, 544 F.3d 1192 (11th Cir. 2008), which held that termination claims are within the scope of an agreement to arbitrate disputes "related to employment":

> A plain meaning interpretation of *either* the "all workplace disputes" *or* "disputes arising from or related to employment" language suggests that employment-termination disputes do indeed fall under the scope of the Open Door arbitration agreement. It is axiomatic that a termination from a job "arises from or relates" to employment at a company. Similarly, a termination is a "workplace dispute" in the sense that termination is the final stage of a workplace dispute— that is, employers resort to termination as a last step in resolving workplace conflicts. Thus, because termination proceedings are the final incident of a workplace conflict, Lambert's suggestion that this dispute falls outside the scope of the arbitration agreement is rejected.

*Id.* at 1199 (emphasis added). Moreover, even if the scope of arbitrable issues was ambiguous, the FAA's presumption in favor of arbitrability would be triggered because the Court has found that there is a valid and enforceable arbitration agreement. *See* FAA, 9 U.S.C. § 1 *et seq.*; *see also Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115 (11th Cir. 2014) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010)).

**D. The Acknowledgements Are Not Unconscionable.**

The parties dispute whether the Acknowledgements are unconscionable and therefore unenforceable. (ECF No. 115 at 23.) Whether an arbitration provision is unconscionable is a question of state law and therefore the provision is interpreted according to state law rules of contract construction. *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007). Florida law requires a "showing of *both* procedural and substantive unconscionability" to invalidate a contract. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir. 2010) (emphasis in original). The Plaintiffs' unconscionability argument fails on both the substantive and the procedural prongs of the two-part analysis.

*a. Substantive Unconscionability.*

The Plaintiffs failed to satisfy the substantive prong of the unconscionability analysis. Substantive unconscionability is demonstrated by showing that "the terms of the contract are unreasonable and unfair." *Powertel, Inc. v. Bexeley*, 743 So.2d 570, 574 (Fla. 1st DCA 1999). To determine substantive unconscionability, courts consider "whether the disputed terms limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes." *E.E.O.C. v. Taco Bell of Am., Inc.*, 2007 WL 809660, at *1 (M.D. Fla. Mar. 15, 2007) (citing *Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So.2d 990, 992 (Fla. 4th DCA 2004)).

On its face, the Plaintiffs' strongest unconscionability argument is that the arbitration agreement is unilateral. Specifically, the Plaintiffs argue that "only the '**employee is required to submit** any dispute related to that individual's employment to arbitration,' while the employer is not required to submit any dispute to arbitration." (ECF No. 115 at 24 (emphasis copied from the Plaintiffs' brief).) After arguing that "only" the Plaintiffs are required to submit their disputes to arbitration, the Plaintiffs go on to cite *Palm Beach Motor Cars*, which held that "[w]here one party is bound to arbitrate its claims but the other is not, there can be substantive unconscionability." (*Id.* (citing 885 So. 2d at 992).) However, the first six words of the arbitration provision quoted by the Plaintiffs are "Morgans Hotel Group agrees and each . . . ." (ECF No. 112-4 at 61.) In other words, the Plaintiffs excerpted the arbitration provision in a manner that omitted language materially distinguishing the Acknowledgements from the facts of *Palm Beach Motor Cars*. As discussed in Part III.A.i., *supra*, the Court can conclude that the Acknowledgements correspond to the 2009 Handbook, which is a contract to the extent that its terms were incorporated into the Acknowledgements, and which mutually obligated Morgans and the employees to arbitrate.

Having explained why the Plaintiffs' strongest argument for unconscionability is unavailing, the Court now turns to Plaintiffs' other arguments. The Plaintiffs also argue that the arbitration agreement is illusory to the extent that Morgans retained the right to unilaterally modify the agreement. However, the Plaintiffs' argument is based on cases decided under Texas and Massachusetts law, neither of which are applicable here. (ECF No. 115 at 16-17.) Moreover, even if this issue had been briefed with reference to governing law, it is not clear to the Court that provisions of the 2009 Handbook that were not incorporated by the Acknowledgements, such as the provision

authorizing Morgans to modify the terms of the 2009 Handbook, could be used to modify those particular provisions that were reduced to a contract.

     *b. Procedural Unconscionability.*

     The Plaintiffs' procedural unconscionability arguments are also unpersuasive. The procedural component of unconscionability relates to the manner in which the contract was entered, and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms. *Dorward v. Macy's Inc.*, No. 2:10-CV-669-FTM-29, 2011 WL 2893118, at *5 (M.D. Fla. July 20, 2011) (citing *Pendergast*, 592 F.3d at 1135). The procedural unconscionability analysis requires courts to look to: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a take-it-or-leave-it basis; (4) the complaining party's ability and opportunity to understand the disputed terms of the contract. *Id.* The "central question" is "whether the consumer has an absence of meaningful choice in whether to accept the contract terms." *Pendergast*, 592 F.3d at 1135 (citing *Belcher v. Kier,* 558 So.2d 1039, 1042 (Fla. 2d DCA 1990). Finally, when assessing procedural and substantive unconscionability, "a balancing approach is employed allowing one prong to outweigh another provided that there is at least a modicum of the weaker prong." *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014).

     The Court has already determined that the arbitration provision is not substantively unconscionable. Accordingly, there is not so much as "a modicum" of substantive unconscionability left in the Agreement, and the Court need not weigh the procedural unconscionability prong. *See Basulto*, 141 So. 3d at 1159. Nevertheless, the Court notes that the Plaintiffs failed to show procedural unconscionability. The crux of the procedural unconscionability argument relates to the "Plaintiffs' lack of English proficiency" and the fact that the Acknowledgements were presented to them in English. (ECF No. 115 at 24.) The parties agree that a Spanish translator was present when some of the Plaintiffs were presented with the Acknowledgements. However, the Plaintiffs argue that there was "an affirmative misrepresentation" or that the Defendants "prevent[ed] [the Plaintiffs] from reading or understanding" the agreements. (*Id.*) The issue with this argument, which is made with reference to Plaintiff Echevarria's Answers to Defendants' Interrogatories, is that it is not supported by the record. Ms. Echevarria's Answers state that, a "Spanish translator was present at the meeting but did not translate the contents of the employee handbook, or explain the document that we were told to sign." (ECF No. 112-12

at 4.) In other words, far from "affirmative[ly] misrepresent[ing]" the contents of the handbook, the Plaintiffs' own evidence does not establish that there were any representations whatsoever made by the Spanish translator. Cutting through the unsubstantiated argument of malfeasance, the issue left for the Court to determine is what to make of the Plaintiffs' signed agreement that they did not read.

Florida law has long held that a party to a contract is "conclusively presumed to know and understand the contents, terms, and conditions of the contract." *Rocky Creek Ret. Properties, Inc. v. Estate of Fox ex rel. Bank of Am., N.A.*, 19 So. 3d 1105, 1109 (Fla. 2d DCA 2009) (quoting *Stonebraker v. Reliance Life Ins. Co. of Pittsburgh*, 123 Fla. 244, 166 So. 583, 584 (1936)). "A party has a duty to learn and know the contents of an agreement before signing it," and "[a]ny inquiries . . . concerning the ramifications of [the contract] should have been made before signing." *Onderko v. Advanced Auto Ins., Inc.*, 477 So.2d 1026, 1028 (Fla. 2d DCA 1985); *see also Berry v. Berry*, 992 So.2d 898, 900 (Fla. 2d DCA 2008). "This rule of law provides that ignorance of the contents of a document does not ordinarily affect the liability of one who signs it." *Keller v. Reed*, 603 So. 2d 717, 720 (Fla. 2d DCA 1992). The Plaintiffs have failed to show that they took any effort to satisfy their duty to learn and know the contents of the agreements that they signed. While ignorance of the contents of a document could affect the Plaintiffs' liability if they were affirmatively misled as to those contents, there is no record evidence of any misrepresentations. Accordingly, the Court cannot credit the Plaintiffs' attempt to avoid the general rule that a party is responsible for learning and knowing the contents of agreements that they sign. This is true for the Creole-speaking Plaintiffs, who did not claim to ask for a Creole translator. It is also true for the Spanish-speaking Plaintiffs who were provided a Spanish translator and did not claim to have solicited any translation. It was their burden to investigate the terms of the contract. "No party to a written contract [in Florida] can defend against its enforcement on the sole ground that he signed it without reading it." *Allied Van Lines, Inc. v. Bratton*, 351 So.2d 344, 348 (Fla. 1977); *see also Jacobs v. Chadbourne*, 733 F. App'x 483, 485 (11th Cir. 2018) (same).

The Plaintiffs next argue that the arbitration provision in the 2009 Handbook "is in small print font (6 point)" in a document that is over 100 pages long. Although the Defendants did not respond to this point, the Court finds it unavailing. As to font, "[t]he remainder of the provision's text appears in the same type as every other term in the agreement." *Larsen v. Citibank FSB*, 871 F.3d 1295, 1311 (11th Cir. 2017); *see also Palacios v. Boehringer Ingelheim Pharms., Inc.*, No. 10-22398-Civ-UU, 5 (S.D. Fla. Apr. 18, 2011) (Ungaro, J.) (holding that font size does not weigh in favor of unconscionability where

challenged text "is of the same font type and size as the other clauses in the agreement. Thus, the Waiver is not hidden or otherwise obscure enough to render it procedurally unconscionable."); *Oglesbee v. Indymac Fin. Servs., Inc.,* 675 F. Supp. 2d 1155, 1158 (S.D. Fla. 2009) (King, J.) (same). As to the length of the document, the Plaintiffs do not explain how that is relevant to the facts of this case where there is a single-page Acknowledgement that expressly underscores the Plaintiffs' agreement to "Binding and Final Arbitration." (ECF No. 112-4 at 70.) In the face of a four-paragraph signature page that expressly identifies the arbitration provision among the hundred-plus pages of the 2009 Handbook, the Court is not persuaded by the Plaintiffs' implication that the arbitration provision was hard to find. On the contrary, it was arguably the most conspicuous of all the provisions in the 2009 Handbook because it was highlighted in the Acknowledgements.

## IV.   Conclusion

Having concluded that the arbitration provision in the Acknowledgement is valid and enforceable, and that it was not superseded, the Court now **grants** the Defendants' motion to compel arbitration of the claims brought by Plaintiffs Carmen Duffoo, Teresa Echevarria, Eduardo Flores, Deceide Gustave, Yvon Hilaire, Miguelina Jimenez, Sophia Leon, Moises Madriz, Joseph Metellus, Celamene Pierre, Edmond Raymond, Jose Salazar, Jose Sanchez, Rodnet Theoc, and Sanders Villier (**ECF No. 10**); and the Court **stays** this matter with respect to those specific plaintiffs only. However, this case shall proceed expeditiously with respect to Plaintiffs Terencius Delphin, Larry Nelson, Camereze Saint Fort, and Lucienne Victorare, who were not subject to the motion to compel arbitration. Additionally, the parties must file a joint status report on or before December 30, 2020, and every 90 days thereafter, updating the Court as to the status of the arbitration. For the reasons set forth above, the Court **denies as moot** the Plaintiffs' motion to prelude (**ECF No. 114**).

**Done and ordered**, at Miami, Florida, on September 30, 2020.

Robert N. Scola, Jr.
United States District Judge