**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-23961-Civ-SCOLA/TORRES

DECEIDE GUSTAVE, *et al.*,

        Plaintiffs,

v.

SBE ENT HOLDINGS, LLC *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**
**ON PLAINTIFFS' MOTION FOR FEES**

      This matter is before the Court on Larry Nelson's, Terencius Delphin's, Camereze Saint Fort's, and Lucienne Victor's (collectively, "Plaintiffs") motion for fees [D.E. 159] against SBE ENT Holdings, *et al.*'s ("Defendants"). [D.E. 31]. Defendants responded to Plaintiffs' motion on May 28, 2021 [D.E. 174] to which Plaintiffs replied on July 15, 2021. [D.E. 181]. Therefore, Plaintiffs' motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiffs' motion for fees should be **GRANTED in part** and **DENIED**.

1

## I.  BACKGROUND

On September 24, 2019, nineteen former employees of the Delano Hotel filed a complaint alleging that Defendant discriminated against them.  The complaint includes allegations, among others, that Defendant discriminated on the basis of color, race, and national origin in violation of Title VII of the Civil Rights Act, age in violation of the Age Discrimination in Employment Act, unlawful employment practices in violation of the Florida Unlawful Employment Practices Act ("FUEPA"), retaliation, and hostile work environment.  After the filing of this action, the Court compelled fifteen of the plaintiffs to arbitration.  The four remaining plaintiffs later resolved their claims during mediation on October 14, 2020 and they now seek a reasonable fee award pursuant to the underlying settlement agreement.

## II.  APPLICABLE PRINCIPLES AND LAW

Generally, under the "American Rule" in the United States, the prevailing party in litigation may not collect its attorney's fees from the losing party. *See Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.,* 532 U.S. 598, 602 (2001).  That is, each party – including the prevailing party – must bear its own fees.  The rationale of the "American Rule" is that "since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit." *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1229 (6th Cir. 1984).  Certain exceptions exist, however, that allow a prevailing party to recover its fees. *See id.*; *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1329 (11th Cir. 1998) ("Florida conforms to the

'American Rule' under which attorneys' fees are awarded only when permitted by statute or contract.") (citing *Cook v. Deltona Corp.,* 753 F.2d 1552, 1563 (11th Cir. 1985)).  These exceptions include: "(1) when a statute grants courts the authority to direct the losing party to pay attorney's fees; (2) when the parties agree in a contract that one party will pay attorney's fees; and (3) when a court orders one party to pay attorney's fees for acting in bad faith." *In re Home Depot Inc.*, 931 F.3d 1065, 1078 (11th Cir. 2019).

### III.   ANALYSIS

Plaintiffs seek a fee award of $389,302.50, including a contingency fee multiplier that increases the total to 2.5 times the original amount or $973,256.25. Plaintiffs say that a higher fee award is appropriate here because, unlike most employment matters, this case involves multiple parties and a pattern of wrongful conduct.  Plaintiffs also claim that Defendants refused to learn from their prior behavior and failed to reach an early settlement.  Plaintiffs accuse Defendants of engaging in scorched earth litigation tactics and that, it was not until the hiring of more experienced counsel, that Defendants realized their mistake and liability.  For these reasons, Plaintiffs call this case a unique challenge that justifies an enhanced fee award.

Defendants oppose the motion because the amount sought is excessive. Defendants take issue with (1) the hourly rates for the partner-level attorneys, (2) the request to recover fees for the plaintiffs in arbitration, (3) the significant time spent on arbitration-related discovery, (4) the unreasonable amount of time drafting

3

pleadings and motions, (5) the duplicative tasks, and (6) the vague and block-billed time entries. Defendants also oppose the request for a multiplier because there is nothing about this case that justifies an enhancement. Therefore, after calculating a revised lodestar, Defendants request that the Court enter a substantially reduced fee award of $189,830.25.

### A.   *The Entitlement to Fees*

The first question is entitlement and whether Plaintiffs are the "prevailing party" in this case. If Plaintiffs are not a "prevailing party," the inquiry ends. To determine if a party is "prevailing," it requires a finding that there was a court-ordered material alteration of the legal relationship between the parties. *See Buckhannon Bd. and Care Home, Inc.*, 532 U.S. at 605. The Eleventh Circuit has found that a "material alteration" occurs in: "(1) a situation where a party has been awarded by the court 'at least some relief on the merits of his claim' or (2) a 'judicial imprimatur on the change' in the legal relationship between the parties." *Smalbein ex rel. Est. of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003) (quoting *Hewitt v. Helms,* 482 U.S. 755, 760 (1987)).

The parties attended mediation on October 14, 2020 where they reached a settlement designating Plaintiffs as the prevailing party. That provision states that, notwithstanding separate provisions of the agreement, the parties stipulate that Plaintiffs are the prevailing party for the purpose of seeking fees and costs:

> Notwithstanding the provisions of Paragraphs 1, 10, and 14 of this Agreement, the Parties stipulate that [Plaintiffs are] deemed the prevailing party only for purposes of entitlement to attorney's fees and costs incurred a result of the action.

[D.E. 159 at 3].   Because the underlying contract designates Plaintiffs as the prevailing party and the parties agree that fees and costs are recoverable, we turn to the lodestar method for calculating that amount.[1]

### B.      *The Lodestar Method of Determining Reasonable Fees*

To determine an appropriate fee award, we employ the lodestar method.   *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.   We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee").   This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed."   *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly."   *Id*.

The lodestar method requires the Court to first determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended.   *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Auth. Of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005).   Following the Court's calculation, "the court must next consider the necessity of an adjustment for results obtained."   *Norman*, 836 F.2d at 1302.   Therefore, when

---

[1]      Although the settlement agreement entitles Plaintiffs to costs, they only seek fees for the purposes of this motion.

awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id*. at 1304 (citation omitted).

In awarding attorneys' fees, "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999). Courts, however, have considerable discretion when determining whether a party to a case should receive a fee award. *See Cullens v. Georgia Dept. Of Transp.,* 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit. *See Norman*, 836 F.2d at 1299-1302. It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters. *See, e.g., Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens,* 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation

and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

### C.    *The Reasonable Hourly Rate*

The first step in the lodestar method is to consider the reasonable hourly rate. This rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299). The relevant market is "the place where the case is filed." *ACLU,* 168 F.3d at 427 (internal quotation marks and citation omitted). The relevant legal community here is South Florida.

Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974). The movant is required to submit to the Court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate. *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."). Ultimately, the Court remains an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent

judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).[2]

Plaintiffs request an hourly rate of $650 for Jason Alderman ("Mr. Alderman"), $550 for Kristy Johnson ("Ms. Johnson"), $550 for Cristina Alonso, $300 for Troy Tolentino ("Mr. Tolentino"), and $150 for four paralegals or law clerks. While Defendants agree that the rates for Mr. Tolentino and the nonlawyers are reasonable, they take issue with the billing rates for Mr. Alderson, Ms. Johnson, and Ms. Alonso. Defendants say that, in looking at comparable cases in the Southern District of Florida, a rate of $400-$450 is generally appropriate for senior level attorneys with approximately 20 years of experience litigating employment cases and that none of the *Johnson* factors weigh in favor of exceeding that amount. Defendants add that, while Plaintiffs achieved a higher billable rate for a related case, this is not the same action and that an award in the companion case was

---

[2]     The 12 *Johnson* factors are as follows:

      (1) the time and labor required;
      (2) the novelty and difficulty of the questions;
      (3) the skill requisite to perform the legal service properly;
      (4) the preclusion of other employment;
      (5) the customary fee;
      (6) whether the fee is fixed or contingent;
      (7) the time limitations imposed by the client or circumstances;
      (8) the amount involved and the results obtained;
      (9) the experience, reputation and ability of the attorneys;
      (10) the undesirability of the case;
      (11) the nature and length of the professional relationship with the client; and
      (12) the awards in similar cases.

*Johnson*, 488 F.2d at 717-719.

achieved via a settlement agreement – *not* via a lodestar calculation.  Thus, Plaintiffs request that the Court reduce the rates of Ms. Johnson and Ms. Alonso to $400/hour and adjust the rate for Mr. Alderman to $425/hour.

Defendants' argument is well taken because, while Plaintiffs' counsel devoted substantial time and resources to litigating this case, fees for employment cases are generally awarded in this district at $450/hour.  And that applies to even the most senior-level attorneys with almost 3 decades of experience.  *See, e.g., Bent v. Ft. Lauderdale Hosp., Inc.*, 2020 WL 4209335, at *6 (S.D. Fla. June 12, 2020), *Report and Recommendation adopted*, 2020 WL 4208049 (S.D. Fla. July 22, 2020) (finding an hourly rate of $425 is reasonable in the South Florida legal market for a lawyer admitted in 1993 and with 27 years of experience); *Rolle-Collie v. Dep't of Transportation*, 2020 WL 5127551, at *3 (S.D. Fla. Aug. 13, 2020), *Report and Recommendation adopted*,  2020 WL 5116601 (S.D. Fla. Aug. 31, 2020) (finding an hourly rate of $400 appropriate for a lawyer with than 20 plus years of experience).

Plaintiffs disagree because their lawyers are above average and have substantial experience in financial, corporate, and multi-party complex litigation.  Plaintiffs also assert that this case required great difficulty and presented novel questions of law.  But, even after taking into consideration these factors, there is no compelling reason to award fees that are inconsistent with the South Florida legal market.

This is not to say that Plaintiffs' attorneys lack experience.  Indeed, the opposite is true because all three partner-level attorneys each have more than

9

twenty years of litigating employment matters. The problem here is that their rates are not commensurate to the South Florida legal market and Plaintiffs fail to reference a case in this district where a court undertook a lodestar analysis and awarded lawyers with the rates requested in an employment matter. That is not a coincidence because – even assuming that the lawyers here are the best in their field and that this matter presents unique challenges – the rates requested are too high to comparable cases.

We therefore reduce Mr. Alderman's rate to $450/hour to compensate him for his role as lead trial counsel, and $400/hour for Ms. Johnson and Ms. Alonso. *See Rodriguez v. RMK World Wide Inc.*, 2018 WL 4765184, at *3 (S.D. Fla. Sept. 13, 2018), *Report and Recommendation adopted,* 2018 WL 4744181 (S.D. Fla. Oct. 2, 2018) (awarding attorney with 24 years of experience in an employment case with a rate of $350/hour). We also agree with the parties that the rates for Mr. Tolentino and the four nonlawyers are reasonable given the work that they performed, their individual levels of experience, and the amounts awarded in similar employment cases. The rates will therefore be adjusted to: (1) $450/hour for Mr. Alderman, (2) $400/hour for Ms. Johnson, (3) $400/hour for Ms. Alonso, (4) $300/hour for Mr. Tolentino, and (5) $150/hour for each paralegal and law clerk.

### D. *The Reasonable Number of Hours Expended*

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended. The award must exclude compensation for hours that would be unreasonable to bill to a client and therefore to one's adversary

irrespective of the skill, reputation, or experience of counsel. *See A.C.L.U. of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award. *A.C.L.U. of Georgia*, 168 F.3d at 428. If the fee applicant fails to exercise required billing judgment, the Court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary." *Id.* at 428. As in the analysis of reasonable hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees. *Norman*, 836 F.2d at 1303. Accordingly, it is "perfectly proper to award attorney's fees based solely on affidavits in the record." *Id.* at 1303 (citing *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980)).

Plaintiffs seek to recover fees for 1,028.15 hours of legal work. Plaintiffs claim that this number is reasonable because Defendants "fought . . . tooth-and-nail on every issue," "vigorously litigated this case," "refus[ed] to participate in an early mediation," and "refus[ed] to concede or stipulate as to basic issues that created substantial discovery disputes and unnecessary litigation." [D.E. 159 at 15]. Plaintiffs also claim that, while they made every effort to staff this matter cost-effectively, their lawyers were forced to expend significant hours to achieve a favorable result. Thus, Plaintiffs request the following number of hours for each timekeeper: (1) 231.95 for Mr. Alderman, (2) 44.70 hours for Ms. Johnson, (3) 93.5

11

hours for Ms. Alonso, (4) 425.50 hours for Mr. Tolentino, and (5) 232.5 hours for four paralegals and law clerks.

Defendants ask that the Court reduce the number of hours by 40% because the petition fails in several material respects. Defendants first complain that the number of hours is inflated because it includes time spent representing 15 plaintiffs that are now in arbitration.[3] Defendants also object to Plaintiffs seeking to recover fees for arbitration-related discovery because, at numerous times, their attorneys took depositions or served discovery for the sole purpose of determining whether this case should be litigated in federal court or compelled to arbitration. Defendants say that this cannot be recoverable because the time spent for the arbitration plaintiffs was not incurred for the benefit of the entire litigation. And Plaintiffs apparently made this worse because they used multiple lawyers and paralegals for almost every deposition and hearing where multiple people performed the same tasks, all of which unnecessarily increased the number of hours expended.

The complaints do not end there because – while Plaintiffs say that their lawyers are experts in litigation and deserve top rates – Defendants accuse them of spending excessive amounts of time for the most mundane activities. Defendants also focus on the time spent drafting lengthy and unnecessary pleadings because there is no justifiable reason Plaintiffs spent 34 hours drafting their original

---

[3]     On September 30, 2020, the Court compelled 15 of the 19 plaintiffs to arbitration [D.E. 132] or approximately one year after the filing of this action in September 2019. [D.E. 1]. The motion here is for the recovery of the 4 remaining plaintiffs.

complaint.   Defendants say that the number of hours spent on the amended complaint is even more egregious because, despite no material changes, Plaintiffs expended another 33 hours.   And Defendants claim that the same number of inflated hours continued throughout this case because Plaintiffs later spent, for example, 32 hours drafting a motion to strike that the Court denied because it would require the Court to "spend a significant amount of resources on a motion that may, in many respects, be a fruitless exercise if the case is compelled to binding arbitration." [D.E. 44 at 2].   Defendants suggest that the same reasons the Court denied that motion apply to Plaintiffs' conduct at large because, while the latter claims that they litigated this case for the benefit of their clients, the lawyers failed to exercise billing judgment and made matters worse with records that include vague and block-billed entries.   Hence, Defendants conclude that Plaintiffs should be entitled to a 40% reduction and approximately $189,000 in attorney fees.

Plaintiffs spend several pages defending the number of hours expended. They say that arbitration-related matters should be recoverable because, in alleging a pattern and practice of employment discrimination, the work performed in connection with the non-settling plaintiffs was useful in the disposition of the claims here.[4]   Plaintiffs assert that no stay existed to limit discovery and that they "were required to press-forward and litigate their claims regardless of any potential outcome as to the non-settling plaintiffs' claims." [D.E. 181 at 7].   Plaintiffs also

---

[4]     Plaintiffs clarify that they do not seek any fees for the time spent briefing the arbitration-related motion.

counter the accusation that they spent an unreasonable number of hours drafting the pleadings in this case because each plaintiff experienced a record of discrimination that required individual attention and a voluminous review of the underlying claims.  And given that the pleadings contain a high level of detail, Plaintiffs say that the hours spent drafting the complaints conserved resources because the parties avoided motion practice with well-pled allegations.

In further defense of the number of hours expended, Plaintiffs say that the filing of certain motions was reasonable.  Plaintiffs reference, for example, the filing of their motion to strike because, although the Court denied that request, a failure to seek that relief would have constituted a waiver.  And Plaintiffs assert that a party should not waive any potential relief in complex litigation.   Plaintiffs also dispute the accusation that they engaged in block-billing because, in relying on the opinion of Joel Brown ("Mr. Brown")[5], he performed a task-by-task review of their billing records and opined that the "entries [have] specific references and limited block billing."  [D.E. 159-6 at ¶ 30].  Because the billing records are detailed, individualized, and represent billing judgment, Plaintiffs conclude that any reduction in fees is unwarranted.

The most glaring problem with the motion for fees is that, even putting aside the areas where a marginal reduction might be appropriate, there is no explanation as to how the Court can separate the number of hours expended between two groups of plaintiffs.  Indeed, when looking at the timesheets, the attorneys never

---

[5]    Mr. Brown is a board-certified trial lawyer and former Florida state court judge.

separated the time they spent for the plaintiffs that reached a settlement here versus the plaintiffs in arbitration. Some entries can, of course, be separated because they mention a specific individual. But, the overwhelming majority of time entries are generic descriptions that apply to the entire case. And it is unclear how Plaintiffs can recover fees for all the plaintiffs in arbitration when the prevailing party status is limited to the 4 individuals mentioned earlier. It is also possible that, after final disposition of the arbitration, that the same lawyers are entitled to fees for the same work. If so, the lawyers here cannot have their cake and eat it too where they recover fees in this action and do the same following arbitration because that would constitute a double recovery. *See, e.g.*, *Nawaz v. Dade Med. Coll. Inc.*, 2017 WL 11220371, at *5 (S.D. Fla. Aug. 29, 2017), *Report and Recommendation adopted*, 2017 WL 11220372 (S.D. Fla. Sept. 29, 2017) ("Plaintiffs' counsel is in fact asking for an impermissible double recovery."); *Maale v. Kirchgessner*, 2012 WL 2700433, at *1 (S.D. Fla. July 6, 2012) ("Ultimately, because this Court had previously awarded Defendant Kirchgessner attorneys' fees pursuant to her contract, it declined to allow a double recovery by awarding that same amount as a Rule 11 sanction.").

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger,* 10 F.3d at 783). A court may not, however, do both. *Id.* at 1351-1352 (explaining that "by requiring the

district court to conduct either analysis instead of both, we ensure that the district court does not doubly-discount the requested hours").  In deciding between the two options available to the Court, an hour-by-hour approach is sometimes preferable while at other times the "fee documentation can be so voluminous as to render an hour-by-hour review impractical." *Loranger*, 10 F.3d at 783 (holding that where the billing record is voluminous, "the district court need not engage in an hour-by-hour analysis[;r]ather, . . . it may [] reduce [the hours devoted to litigation] in gross if a review of the resubmitted fee request warrants such a reduction") (emphasis added).  "In such cases, an across-the-board cut may be appropriate, as long as a court "articulate[s] [its] reasons for selecting specific percentage reductions." *Roy v. Bd. of Cty. Comm'rs, Walton Cty., Fla.*, 2012 WL 8013976, at *4 (N.D. Fla. Nov. 1, 2012), *Report and Recommendation adopted*, 2013 WL 1883247 (N.D. Fla. May 6, 2013) (quoting *Loranger*, 10 F.3d at 783).

Here, an across-the-board cut is preferred because the time records are too voluminous and unclear to determine with specificity the number of hours attributable to each group of plaintiffs.  This option is desirable for a separate reason because, although the billing records do not contain many vague or block-billed entries, they do exist.  And it also appears that the lawyers here spent an excessive amount of time performing tasks that should have been completed in a shorter time frame.  These lesser deficiencies pale in comparison, however, to the time spent representing all 19 plaintiffs because, from the filing of this action on September 24, 2019 [D.E. 1] to the date the Court granted the motion to compel

arbitration on September 30, 2020 [D.E. 132], there is no way to carve out the time spent on the plaintiffs in arbitration. And Plaintiffs offer no alternative for the Court to consider. They merely say that the work performed was for the benefit of all plaintiffs. Yet, for the reasons already stated, that cannot stand because it opens the door to a double recovery and a finding that the plaintiffs in arbitration are a prevailing party when that matter is pending final disposition.

To accommodate for these shortfalls, the undersigned finds that a 30% reduction is appropriate because it considers the timeframe that all 19 plaintiffs appeared in this action and the other deficiencies discussed above. That includes, among others, a reduction for vague and block-billed hours and the excessive amount of time spent on mundane tasks. Thus, in applying a 30% cut, the number of hours for each timekeeper should be reduced as follows: (1) 162.4 hours for Mr. Alderman, (2) 31.3 hours for Ms. Johnson, (3) 65.5 hours for Ms. Alonso, (4) 297.9 hours for Mr. Tolentino, (5) and 162.8 hours for the four paralegals and law clerks.

### E.    *The Contingency Fee Multiplier*

The next issue is Plaintiffs' request for a contingency fee multiplier under FUEPA. "After determining the lodestar . . . the court must determine the necessity of an adjustment for the results obtained." *Coy v. Allstate Floridian Ins. Corp.*, 2007 WL 1732098, at *8 (M.D. Fla. June 14, 2007) (citing *Norman*, 836 F.2d at 1302). Florida courts "routinely approve[] fees that reward lawyers for pursuing cases that have little chance of success." *Progressive Express Ins. Co., v. Schultz*, 948 So. 2d 1027, 1032 (Fla. 5th DCA 2007). That is, "the riskier the case the greater

the multiplier." *Id.* Unlike federal courts applying federal law that consider lodestar "enhancements" under the stricter rubric of *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 543 (2010), courts applying Florida law apply the risk multiplier based on the need for a contingency fee arrangement coupled with evidence in the record that, without a multiplier, the plaintiffs would have faced substantial difficulties finding counsel in the relevant market.[6] *See Sun Bank of Ocala v. Ford,* 564 So. 2d 1078, 1079 (Fla. 1990). Absent such evidence in the record, Florida law does not permit a contingency risk multiplier. *Ruderman ex rel. Schwartz v. Washington Nat. Ins. Corp.,* 465 F. App'x 880, 882 (11th Cir. 2012) ("Because no likely difficulty finding counsel was established, a multiplier was not permissible under Florida law.").

"The primary rationale for allowing a contingency risk multiplier is to provide access to competent counsel for persons otherwise unable to afford it." *Allstate Ins. Co. v. Sarkis*, 809 So. 2d 6, 8 (Fla. 5th DCA 2001). This levels the playing field between parties so that each can secure adequate legal representation. In determining whether a multiplier is necessary, Florida courts generally consider the following three factors:

---

[6]     Plaintiffs request – in a single conclusory remark – that the Court should apply an additional lodestar enhancement "under the federal EEO laws."  [D.E. 159 at 16 ("Prevailing Plaintiffs have a right to a contingency fee multiplier under FUEPA, a state law claim, as well as the lodestar fee enhancement under the federal EEO laws.")].  But, Plaintiffs fail to provide any arguments in support of this enhancement.  It is therefore unclear whether this was an error on Plaintiffs' part or whether they intended to rely solely on the application of a contingency fee multiplier under FUEPA.  Either way, the request for a separate enhancement is unsupported with no need for any further consideration.  We only mention it for the sake of completeness.

> (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in *Rowe* are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.  Evidence of these factors must be presented to justify the utilization of a multiplier.

*Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990).

For these types of cases, a multiplier is a useful tool "when a risk of nonpayment is established." *Id.* This makes "clear that trial judges are not required to use a multiplier; but when they do, evidence must be 'presented to justify the utilization of a multiplier.'" *Joyce v. Federated Nat'l Ins. Co.,* 228 So. 3d 1122, 1128 (Fla. 2017).  As a result, the party seeking the fee need not show that the case represents a "rare" or "exceptional" case to trigger a multiplier.  *Id.* at 1128-29.  The trial judge enjoys the necessary flexibility under Florida law to apply different criteria to different categories of cases in arriving at a multiplier finding.  *Id.* at 1129 (citing *Quanstrom,* 555 So. 2d at 835).

There is no need to dwell too long on the request for a fee multiplier because the satisfaction of the first factor falls woefully short.   Plaintiffs say that the first factor is met because this is a unique case involving low-wage workers who only speak Creole.  They also assert that, without an attorney who speaks Creole, other employment lawyers would have incurred significant expenditures of time and resources.  So, since there is only a small pool of attorneys in South Florida who speak Creole and the Alderman Law Firm is one of the few places with this skill set, Plaintiffs conclude this case justifies a contingency fee multiplier.

This argument is misplaced because the first factor asks whether the relevant market requires a contingency multiplier to *obtain competent counsel* – not whether there are competent lawyers who can litigate a case most effectively. Plaintiffs are, in some respects, re-writing the first factor to suit their own interests because, as they concede in their motion, "[t]here are many attorneys who handle discrimination cases on behalf of plaintiffs in South Florida." [D.E. 159 at 17]. This tactic, while clever, conflates effectiveness in time and resources with the ability to obtain competent counsel. Yet, the two are materially different because a lawyer need not be the most effective to qualify as competent and the same applies to whether that lawyer is obtainable.

Plaintiffs' argument also assumes that a non-Creole speaking lawyer would use the same litigation strategy as the Alderman Law Firm and therefore deter other lawyers from taking similar cases. But, that is not necessarily true because a lawyer concerned with potential costs might undertake a more cost-effective approach with fewer depositions or discovery requests. That would not render him unobtainable or incompetent. It merely constitutes a different legal strategy.

However, the biggest shortfall with Plaintiffs' request for a fee multiplier is the lack of evidence[7] that an employment lawyer is substantially difficult to obtain

---

[7]   The reason obtaining competent counsel is not difficult for employment matters in South Florida has a lot do with the large volume of lawyers practicing in this field and the frequent use of interpreters. In fact, this is now common practice, and it allows lawyers to represent clients that speak languages from all over the world. It is therefore unpersuasive to rely on a language barrier to find it difficult to acquire legal counsel.

20

in South Florida due to a language barrier.  The general rule is that, "before adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk-enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market[.]". *Sun Bank,* 564 So. 2d at 1079 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711 (1987)).

Yet, aside from the declarations of their lawyers submitted in support of the motion for fees[8], Plaintiffs fail to rely on anything where they "were turned away by other law firms or had any difficulty obtaining legal representation in this case." *Rodriguez v. GeoVera Specialty Ins. Co.*, 2020 WL 6800451, at \*13 (S.D. Fla. Nov. 19, 2020) (citing *David L. Goldstein DMD PA v. Phoenix Ins. Co.*, 2018 WL 5084750, at \*6 (M.D. Fla. Aug. 21, 2018) (declining to apply multiplier, in part, because there was "no showing that other firms refused to take the case under a standard contingency arrangement so as to satisfy the Court that the possibility of recovering a contingency fee multiplier was necessary for [p]laintiff to obtain competent counsel")).  Plaintiffs instead rely on speculation and the *possible* difficulties that might arise in securing legal representation.  But, that rings hollow because, "'[i]f there is no evidence that the relevant market required a contingency fee multiplier to obtain competent counsel, then a multiplier should not be awarded.'"  *St. Louis*

---

8    Plaintiffs rely, in part, on Mr. Brown's declaration but that does not speak to the difficulties that they experienced in acquiring legal counsel.  All that Mr. Brown says is that a Creole translator increases the time and labor required in litigating a comparable employment matter.  But, for the reasons discussed above, we have already considered that possibility and found it lacking in satisfying the first factor.

*Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 2019 WL 7905013, at *7 (S.D. Fla. Oct. 10, 2019) (quoting *USAA Cas. Ins. Co. v. Prime Care Chiropractic Enters, P.A.*, 93 So. 3d 345, 347 (Fla. 2d DCA 2012)).

Although there is no need to go any further on the question of whether a fee multiplier should apply here, the second factor considers whether there was an opportunity to mitigate the non-payment of the attorneys' fee. Plaintiffs' lawyers accepted this case on a pure contingency basis and incurred a significant risk of non-payment for their services and no opportunity to mitigate non-payment. However, the existence of a contingent fee agreement alone does not mandate the application of a multiplier. *See Sun Bank of Ocala,* 564 So. 2d at 1079. And that is all that Plaintiffs rely on for a fee multiplier, underscoring why the motion here is so uncompelling.

The final factor considers additional items including the results obtained, and the amount involved in the ligation. Plaintiffs were successful in reaching a favorable settlement and, as consideration, they should be entitled to a substantial fee award as stated above. But, aside from that, Plaintiffs have failed to identify any other factor that has not been adequately accounted for already in the lodestar that requires an enhanced fee. Plaintiffs suggest that this case involved complex litigation and that their lawyers had to "go to the mat," but – after peeling away all the adverbs, adjectives, and catchphrases throughout the motion – this was just a bona fide federal discrimination case that ended with a settlement. And that warrants a substantial fee but nothing more. Plaintiffs nonetheless contend that

their lawyers are the best in the field and that an enhanced fee is necessary for low-wage earners to hire the best legal representation.  Even if we agreed with that predicate, that does not change the analysis, nor does it justify a fee multiplier.

### F.   *Final Calculations*

In applying the hourly rates set forth above with the percentage cut in the number of hours expended, Plaintiffs should recover the following amounts: (1) $73,080 for Mr. Alderman ($450/hour multiplied by 162.4), (2) $12,520 for Ms. Johnson ($400/hour multiplied by 31.3), (3) $26,200 for Ms. Alonso ($400/hour multiplied by 65.5), (4) $89,370 for Mr. Tolentino ($300/hour multiplied by 297.9), (5) and $24,420 for the paralegals and law clerks ($150/hour multiplied by 162.8). This equates to a grand total of $225,590.  Accordingly, the motion for fees should be **GRANTED in part** and **DENIED in part**.

### IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiffs' motion for fees [D.E. 159] be **GRANTED in part** and **DENIED in part**:

A.   The hourly rates requested should be reduced as follows: (1) $450/hour for Mr. Alderman, (2) $400/hour for Ms. Johnson, (3) $400/hour for Ms. Alonso, (4) $300/hour for Mr. Tolentino, and (5) $150/hour for each paralegal and law clerk.

B.   The number of hours expended should be reduced as follows: (1) 162.4 hours for Mr. Alderman, (2) 31.3 hours for Ms. Johnson, (3) 65.5 hours for Ms. Alonso, (4) 297.9 hours for Mr. Tolentino, (5) and 162.8 hours

for four paralegals and law clerks.

C.     Plaintiffs should recover a total of $225,590 in fees.

D.     The motion for a contingency fee multiplier and lodestar adjustment

should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to order the parties to have **seven (7) days** from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 7th day of September, 2021.


/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge